# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| JOSE J. ORTIZ, | ) | Case No.: 2:09-cv-01795-GMN-PAL |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| SILVER STATE FORD, a Nevada Corporation d/b/a GAUDIN FORD PORSCHE, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

Before the Court is Defendant Silver State Ford d/b/a/ Gaudin Ford Porsche's ("Gaudin") Motion for Summary Judgment (ECF No. 24). Plaintiff Jose Ortiz filed a Response (ECF No. 35) and Defendant filed a Reply (ECF No. 43).

Also before the Court is Defendant's Motion to Dismiss (ECF No. 25). Plaintiff filed a Response (ECF No. 28) and Defendant filed a Reply (ECF No. 40).

## FACTS AND BACKGROUND

This case arises out of allegedly discriminatory treatment of Plaintiff at his place of work. Plaintiff, a Hispanic male, began working for Defendant Gaudin Ford Porsche on or about May 7, 2007. (FAC 2:26-27, ECF No. 1.) Plaintiff was a painter for Defendant. (*Id.*) As a painter he was assigned helpers who would assist him in completing his assigned tasks related to car repair. (*See* Response 8-9, ECF No. 35.) As is industry standard, painters are paid by "flag hours" instead of a typical hourly rate. (*See* MSJ 3-4, ECF No. 24.) This means that a particular job would be assigned a number of "flag hours" and that is how much a painter would be paid for the job regardless of the actual numbers of hours it took to complete the work. (*Id.*)

Therefore if a painter took two hours to complete a three "flagged hour" job, he would still get paid for the three "flagged hours." (*Id.*)

Plaintiff alleges a work environment that encourages discriminatory practices arising from disputes over this pay system and a painter's ability to get supplemental work approved. Supplemental work is any work done to a car that is not typically approved by the insurance company. (*Id.*) Because body-shop estimators cannot approve supplemental work by painters without first receiving approval from the insurance company, anytime a painter would need to do supplemental work to a car he would first need to request approval for the work. (*Id.*) Defendant alleges that Plaintiff routinely did supplemental work without first getting approval. (*Id.* at 4–5.) Plaintiff on the other hand describes a vicious cycle where he would request the approval of supplemental work, but he would have to do the work before it was approved or denied based on the rush of the business. (Response 7–8.) Plaintiff believed that the work was required to do a professional job that would be acceptable to the customers. (*Id.*) As a result he would not get reimbursed for the supplemental work when it was not approved by the insurance company. (*Id.*) Accordingly, Plaintiff believes he was not being properly compensated for his work. (*Id.*) Plaintiff ultimately filed a complaint with the Nevada Labor Commission over Defendant's failure to pay him for the work he was completing. (Response, Ex. 2, Ortiz Depo. 209:1–210:1, ECF No. 35–5.)

Plaintiff admits that race may have had no bearing on the denial of his supplemental work requests. (MSJ, Ex. A-4, Ortiz Depo. 62:8-10; 143:24–146:19, ECF No. 24–3.) However, Plaintiff alleges that the disputes of the supplemental work were a trigger of outward displays of racial animus against him. At times, Plaintiff asserts, he was called various names including "f@$king Mexican" when his work was getting behind or he was waiting to get approval for his supplemental work. (Response, Ortiz Depo. at 225:2–15, 205:3–24.) There would be various conflicts between Plaintiff and his supervisors over whether or not some work should or should

not get done regardless of whether or not the supplemental work would be approved. Plaintiff's witness, Jesus Larios, claims that Plaintiff was called a "f@&king Mexican" and was berated and yelled at by his supervisor, John Hughes. (*See* Response, Ex. 13, Larios Aff., ECF No. 35–19.)

Plaintiff claims to have reported the discriminatory treatment to General Manger Tim Hovik and Parts and Services Director Mark Marshall on August 14, 2008. (Response, Ortiz Depo. at 95:8–96: 20; Response, Larios Aff.). Defendant disputes the subject of this meeting and claims that discrimination and harassment were not discussed. (MSJ, Ex. A-9, Marshall Depo. 21:18–23, ECF No. 24–5.)

Plaintiff was injured at work on September 24, 2008, which resulted in him being off work from September 25 through October 3. (FAC ¶ 34; MSJ, Ex. B-4, Time Card p. 2–3, ECF No. 24-7.) Plaintiff filed a worker's compensation claim for his time off and he was paid accordingly. Plaintiff's doctor put a restriction on Plaintiff's physical activity as a result of his injury. (MSJ, Ex. A-11, Physician Activity Status Report, ECF No. 24-6.) Plaintiff alleges that he could not have performed his full duties at his job without violating the restrictions given to him by his doctor. Defendant claims that Plaintiff could have done some work and had his helpers do more hands on work for him. It appears that there were arguments between the parties regarding whether or not Plaintiff would return to work in his full capacity. (Response, Ortiz Depo. at 116–119.)

At some point before October 8, 2009, Plaintiff filed a charge of discrimination with the Nevada Equal Rights Commission. (Response, Ortiz Depo. at 125:15–28:8.) On October 8, 2009 Plaintiff's job was terminated. (FAC at ¶38.) Defendant laid off twenty-seven employees between Aug 2, 2008 and December 15, 2008. (MSJ, Ex. 12 to A, Laid Off Employee List, ECF No. 24-6.) Defendant stated that the reason Plaintiff was let go was because there was no work for him to do. (Response, Ex. 14, Separation Notice, ECF No. 35–20.) Plaintiff's co-worker,

Jimmy Ines did not get laid off during this time. Mr. Ines was the only other painter and was not a member of Plaintiff's protected class. Plaintiff alleges he was let go in retaliation for filing a complaint with NERC as well as for his internal complaints to management regarding his discriminatory treatment.

Plaintiff filed the instant suit alleging race discrimination, retaliation and hostile work environment in violation of Title VII, 42 U.S.C. §1981 and N.R.S. Chapter 613. Plaintiff's first amended complaint also alleges a sixth cause of action for a violation of Family Medical Leave Act, 29 U.S.C. § 2612(a)(1)(D). However, it appears that Plaintiff has abandoned his Sixth Cause of Action and accordingly the Court will dismiss his FMLA claim.

## DISCUSSION

**A.     Motion to Dismiss**

Defendant requests that the Court dismiss this case based on Plaintiff's alleged perjured deposition testimony. Defendant moves for this sanction pursuant to the Court's inherent power. *See Combs v. Rockwell International Corporation*, 927 F.2d 486, 488 (9th Cir. 1991)("Dismissal is an appropriate sanction for falsifying a deposition [and] the court's inherent powers can be called upon to redress such mendacity."). The Court denies the motion. It is a question for the jury to determine whether or not Plaintiff was truthful during his deposition.

**B.     Motion for Summary Judgment**

    **1.     Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant

/ / /

/ / /

/ / /

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).[1]  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

---

[1] Federal Rule of Civil Procedure 56 was recently amended, effective December 1, 2010. *See* Fed. R. Civ. P. 56 Advisory Committee Notes, 2010 Amendments.  The standard for granting summary judgment remains the same. *Id.* Amendments to the Federal Rules of Civil Procedure govern proceedings that are pending at the time the amendments become effective, as long as the Supreme Court does not specify otherwise and the application would not be infeasible or work an injustice. Fed. R. Civ. P. 86(a)(2).  Here, to prevent against any injustice to the parties, the Court will apply the language of Rule 56 that was in use prior to the new December 1, 2010 amendments.  This earlier language was the language that was applicable when the Motion for Summary Judgment was filed and when the Response and Reply was submitted and, therefore, would be the most apt language to apply.

opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**2.    Analysis**

Plaintiff first alleges race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  Title VII prohibits employers from discriminating against an individual based on race and §1981 prohibits discrimination in the "benefits, privileges, terms and conditions" of employment. 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. §1981(b); *Metoyer v. Chassman*, 504 F.3d 919, 935 (9th Cir. 2007).  The same legal analysis and principles are applied in Title VII disparate treatment cases and § 1981 claims.[2]  *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

---

[2] Similarly, NRS §613.330 makes it an unlawful employment practice for an employer to "discriminate against any person with respect to his compensation, terms, conditions or privileges of employment, because of his race, color, religion, sex, sexual orientation, age, disability or national origin." Because a claim for discrimination under Nevada law is substantially similar to a Title VII claim, the court will discuss only Title VII.

"A plaintiff can establish a prima facie case of discrimination through either the burden-shifting framework set forth in *McDonnell Douglas* or with direct or circumstantial evidence of discriminatory intent." *Cohen-Breen v. Gray Television Group, Inc.*, 661 F.Supp.2d 1158, 1165 (D. Nev. 2009). Under *McDonnell Douglas*, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Id.* If the plaintiff succeeds in doing so, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. *Id.* If the Defendant provides such a reason, then the burden shifts back to the Plaintiff to show that the Defendant's justification is a mere pretext for discrimination. *Id.*

Plaintiff raises three types of claims under Title VII and 42 U.S.C. § 1981: (1) discrimination; (2) retaliation; and (3) hostile-work environment.

    a.    Race Discrimination

"In order to establish a prima facie case of discrimination, a plaintiff must show (1) that he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).

Plaintiff, as a Hispanic male is a member of a protected class. The parties do not dispute that he was qualified for the position. Plaintiff also provides evidence that he was subject to adverse employment actions because he was given less work than others, he was yelled at and harassed by his managers and he was terminated from his employment. Although Defendant disputes that there were similarly situated individuals outside of Plaintiff's class that were treated more favorably, there is at least a question of fact regarding this prong.

Prong four, similarly situated, is a question of fact. *Beck v. United Food & Commercial Workers Union Local 99*, 506 F.3d 874, 885 n.5 (9th Cir. 2007). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003). "In order to show that the 'employees' allegedly receiving

more favorable treatment are similarly situated . . . the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).

Plaintiff argues that he is similarly situated to Jimmy Ines, who is a painter outside of his protected class who was not fired. Defendant argues however that Mr. Ines is not similarly situated because he did not have problems with his supplemental requests and were paid differently. The problems surrounding Plaintiff's supplemental requests however go to the root of the discrimination claim, so it cannot be used to say Plaintiff was not similarly situated. The similarities between the two employees outweigh the dissimilarities. Both employees were managed by John Hughes. They were both qualified painters that were subject to the same duties and responsibilities. The court finds this sufficient to satisfy the fourth prong.

After the plaintiff demonstrates a prima facie case of discrimination, the burden shifts to Defendant to offer a non-discriminatory reason for his treatment. *Cohen-Breen*, 661 F. Supp.2d at 1165. Defendant argues that Plaintiff's trouble and not getting paid for his supplemental requests was entirely his and the insurance company's fault. They offer evidence that Plaintiff was warned that he should not do supplemental work until after he was approved by the insurance company. Also, the reason why Plaintiff was laid off, as stated on the separation notice, was "lack of work." Defendant argues that it had to terminate Plaintiff's employment because they were experiencing economic difficulties that required them to lay off twenty-seven employees between Aug 2, 2008 and December 15, 2008. This evidence does establish a legitimate non-discriminatory reason for Plaintiff's pay disparities and termination.

Finally, the burden shifts back to Plaintiff to prove that reasons offered were merely pretext. *Cohen-Breen*, 661 F. Supp.2d at 1166. Plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

*Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1093-94 (9th Cir.2001). "If there is no evidence of pretext, the defendant is entitled to dismissal as a matter of law." *Collings v. Longview Fibre Co.*, 63 F.3d 828, 836 (9th Cir. 1995).

Plaintiff offers evidence that he was not let go based on lack of work. Mr. Ines testified that in his opinion there was plenty of work and that lack of work would not be the reason they let Plaintiff go. (Response, Ex. 4, Ines Depo. 87:23–88:3, ECF No. 35-10.) Plaintiff also questions the timing of hiring Mr. Ines. Mr. Ines was hired three months before Plaintiff was laid off and Mr. Ines was paid more than Plaintiff. It would make more economic sense to lay off the higher paid employee. Therefore there appears to be a question of fact regarding whether or not Plaintiff was laid off for discriminatory reasons.[3]

      b.    Retaliation

To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir.1994).

Plaintiff offers two reasons for his retaliation claims. First he argues that his protected activity of filing a charge with the Nevada Equal Rights Commission (NERC) resulted in his termination. Second he argues that filing a worker's compensation claim resulted in his termination. It is undisputed that both events qualify as protected activities. Therefore the question for the court to examine is whether or not there is a causal link between the activities and Plaintiff's termination.

Plaintiff's deposition testimony reveals that Defendant had knowledge of his complaint to

---

[3] Defendant also argues that it qualifies for the affirmative defense articulated in *Burlington Industries, Inc. v. Ellerth*, 524 US 742, 764-65 (1998). However, as pointed out in *Ellerth*, the affirmative defense is only available if the harassment did not culminate in a "tangible employment action" such as discharge. *Id.*; *see also Davis v. Team Elec. Co.*, 520 F.3d 1080 (9th Cir. 2008). There is no question that Plaintiff's employment was terminated in this case.

the NERC before he was laid off. (See Ex. E). However Defendant argues that it did not know of the complaint before he was let go as evidenced by the fact that the letter sent to Defendant to notify it of the charge was dated October 9, 2008. (Ex. 6 to Ex. B). Defendant laid off Plaintiff on October 8, 2008. Thus there is contradictory evidence regarding whether or not Defendant knew of Plaintiff's complaint. This court must view the evidence in the light most favorable to Plaintiff and therefore Plaintiff has demonstrated a prima facie case of retaliation.

The same holds true for Plaintiff's worker's compensation claim. While Defendant did pay the claim, the evidence shows that the parties disagreed about Plaintiff's ability to do work. Plaintiff's doctor did put a restriction on the type of work Plaintiff could do. Plaintiff claims that he was threatened when he told his supervisors that he could not work and that they 'forced' him to go into work. Defendant on the other hand argues that Plaintiff could have done other work, so he needed to come in if he wanted a paycheck. Accordingly, there is a material question regarding whether Defendant was pushing Plaintiff to do work that Plaintiff was restricted from doing. This in turn leads to a question regarding whether or not Defendant was inclined to terminate Plaintiff's employment because they thought he was using his injury as an excuse for not doing his job. Further, temporal proximity is evidence of causation in employment retaliation cases. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008). Here, Plaintiff was terminated within weeks of his workers compensation claim.

Under the *McDonnell-Douglas* burden shifting analysis, the burden then shifts to Defendant, who offers that Plaintiff was let go based on lack of work. Plaintiff then counters that this reason is pretext. For the same reasons given *supra*, section a, the Court finds that there are material issues in dispute regarding whether or not Plaintiff was let go in retaliation.

            c.      Hostile Work Environment

To prevail on a hostile-work-environment-harassment claim, the plaintiff must show (1) that he was subjected to abusive verbal or physical conduct because of his national origin;

(2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Vasquez v. County of L.A.*, 349 F.3d 634, 642 (9th Cir. 2004).

The same evidence that Plaintiff provides for his race discrimination claim under Title VII and 42 U.S.C. §1981 can be used to satisfy the requirements for a prima facie case of a hostile-work environment claim. For the reasons stated *supra*, section a, the Court finds the evidence sufficient to survive the Motion for Summary Judgment.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Silver State Ford d/b/a/ Gaudin Ford Porsche's Motion to Dismiss (ECF No. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 24) is **DENIED**. However, Plaintiff's Sixth Cause of Action for a violation of FMLA is **DISMISSED**.

DATED this 27th day of September, 2011.

_____
Gloria M. Navarro
United States District Judge