1

2

3

4                                    **UNITED STATES DISTRICT COURT**

5                                          **DISTRICT OF NEVADA**

6   JOSE J. ORTIZ,                               )
                                                 )        Case No. 2:09-cv-01795-GMN-PAL
7                            Plaintiff,           )
                                                 )        **ORDER AND FINDINGS**
8   vs.                                          )
                                                 )
9   SILVER STATE FORD,                           )
                                                 )
10                           Defendant.          )
                                                 )
    _____)

11

12       The court held a hearing on December 13, 2011, on Defendant Silver State Ford *d/b/a* Gaudin

13  Ford Porsche's Motion to Enforce Settlement Agreement (Dkt. #51) filed November 8, 2011.  James P.

14  Kemp appeared on behalf of the Plaintiff, who was also present, and Scott Mahoney appeared on behalf

15  of the Defendant.  The court has considered the motion, Plaintiff's Response (Dkt. #53), Defendant's

16  Reply (Dkt. #56), and the arguments of counsel.  The court set the matter for hearing to allow the

17  parties to make a record and to make findings of fact.  However, because the undersigned assured the

18  parties at the settlement conference that she would have no further decision-making responsibility in

19  this case to encourage full and frank discussion at the settlement conference, these findings of fact will

20  be submitted to the district judge for her decision of the Motion to Enforce the Settlement.

21                                          **BACKGROUND**

22       On October 13, 2011, the undersigned conducted a settlement conference in this matter, and the

23  parties reached a confidential settlement.  The court entered a Minute Order (Dkt. #50) indicating that a

24  settlement was reached, the terms of which are confidential.  The order set the matter for a telephonic

25  status conference November 15, 2011, indicating that if the stipulation to dismiss was on file before the

26  conference, it would be automatically vacated.  On October 17, 2011, counsel for Plaintiff sent defense

27  counsel a letter indicating that Plaintiff had directed him to revoke the agreement that had been reached

28  at the settlement conference.  The letter asserts that there was no meeting of the minds at the settlement

1    conference; the parties' agreement was not effective until it was reduced to writing; and Plaintiff could

2    revoke the agreement pursuant to 29 U.S.C. § 626(f).

3                                              **DISCUSSION**

4           Defendant contends that a settlement was reached.  Defendant argues that although there were

5    no face-to-face discussions between the parties after the initial joint session, the undersigned went back

6    and forth between Plaintiff and Defendant until the parties reached an agreement on a settlement

7    amount and other essential terms.  Defendant maintains the essential terms that the parties agreed to

8    were the amount of the settlement, a general release of liability, dismissal with prejudice with each

9    party to bear its own costs and attorneys fees, a confidentiality requirement, non-admission of liability,

10   and a no rehire provision.  Defense counsel concedes that Defendant intended to include a waiver of

11   any Age Discrimination in Employment Act ("ADEA") claim as part of the finalized agreement and

12   that payment of settlement proceeds was to be delayed for thirty days to allow the time to run for waiver

13   of any ADEA claim.  However, Defendant contends that there was no representation at the settlement

14   conference that any potential agreement would first have to be reduced to a mutually-acceptable

15   writing.  Rather, the written settlement agreement was simply a document intended to memorialize a

16   settlement that had already been reached.

17          Furthermore, Defendant asserts that 29 U.S.C. § 626(f) has no bearing on whether a settlement

18   was reached.  That section–the Older Workers Benefits Protection Act ("OWBPA")– provides that

19   certain requirements must be met to waive an age discrimination claim under the OWBPA, including

20   one that a person be given twenty-one to forty-five days (depending upon the circumstances) to consider

21   an agreement waiving an age discrimination claim.  Moreover, once the agreement is signed, the

22   plaintiff is then permitted an additional seven days to revoke the agreement.  *See* 29 U.S.C.

23   § 626(f)(1)(F)(I) and (f)(1)(G).  Defendant concedes that it expected the Plaintiff to execute a general

24   release which would include a waiver of any age discrimination claim and that the twenty-one-day and

25   seven-day provisions were to be incorporated into the written settlement agreement.  However,

26   Defendant argues this does not mean that an otherwise binding settlement agreement was not reached

27   until the expiration of the revocation.  Rather, the revocation right only arises "following the execution

28   of such agreement."  *See* 29 U.S.C. § 626(f)(1)(G).

1    In response, Plaintiff asserts that *Flick v. Bank of America,* 197 F.Supp.2d 1229, 1233 (D. Nev.

2    2002), is dispositive of this matter.  In *Flick,* the court found that it could not enforce a settlement

3    agreement in an age discrimination case because 29 U.S.C. § 626(f)(1)(F)(I) requires a plaintiff be

4    given twenty-one days to change his mind if he has not executed the settlement agreement.  *Id.* at 1232

5    (also noting that in cases where the settlement agreement was upheld, the plaintiff had either signed a

6    written statement or agreed to a specific agreement read in open court).  Plaintiff argues the *Flick* court

7    also recognized that once a settlement agreement has been executed, a plaintiff is afforded seven days in

8    which to revoke the agreement pursuant to 29 U.S.C. § 626(f)(1)(G).  *Id.* at 1233.  Additionally, in

9    *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427-428 (1998), the Supreme Court held that 29

10   U.S.C. § 626 must be meticulously followed in order to obtain a waiver under the ADEA and the

11   OWBPA.  Plaintiff contends that if Defendant believes that the protections afforded by 29 U.S.C. § 626

12   do not apply, then there was no meeting of the minds, and no settlement contract was formed that can

13   be enforced by this court.

14   Plaintiff asserts that he notified his counsel the day after the settlement conference–October 14,

15   2011–that he had changed his mind and did not wish to settle.  Plaintiff's counsel was out of town and

16   could not discuss the matter with Plaintiff until October 17, 2011. That same day, he sent a letter to

17   defense counsel alerting them that Plaintiff did not want to settle.  Alternatively, Plaintiff argues that if

18   the court finds an agreement was reached, then Plaintiff chose to revoke it within seven days pursuant

19   to 29 U.S.C. § 626(f)(1)(G).  Because Defendant insisted upon a waiver of Plaintiff's ADEA claim, 29

20   U.S.C. § 626 applies, and Plaintiff was entitled to a reasonable opportunity to change his mind and not

21   settle this case.

22   In reply, Defendant concedes that it wanted a general release, and it contemplated that the

23   twenty-one and seven day requirements of the OWBPA would be included in the written settlement

24   agreement.  However, at the settlement conference, Defendant did not state that it would not settle

25   without a waiver of the ADEA claims.  Defendant asserts *Flick* is not dispositive of this case because

26   Plaintiff did not assert an ADEA claim in his Complaint.  Therefore, Plaintiff was not entitled to an

27   opportunity to back out of the settlement agreement under 29 U.S.C. § 626(f)(1)(G).

28   / / /

1    At the hearing on December 13, 2011, the court allowed the parties to make a record concerning

2  the October 13, 2011, settlement conference.  The court advised counsel for the parties that an order and

3  findings of fact would be made for the district court's decision of the merits of the motion because the

4  undersigned had assured counsel and the parties at the settlement conference that she would no longer

5  have any decision-making responsibility in this case.

6                                                    **FINDINGS**

7    1.    The Complaint (Dkt. #1) was filed September 9, 2009.  It asserts claims under Title VII

8          of the Civil Rights Act of 1964 as Amended, the Civil Rights Act of 1991, and the Civil

9          Rights Act of 1866, 42 U.S.C. § 1981, and violation of NRS Chapter 613.  Plaintiff's

10         claims are based on alleged race, national origin, retaliation and hostile work

11         environment.  His amended complaint also alleged a sixth cause of action for violation

12         of the Family Medical Leave Act.  However, the district judge concluded he had

13         abandoned that claim and dismissed it in her Order (Dkt. #49) denying Defendant's

14         motion to dismiss and motion for summary judgment except to the sixth claim.

15   2.    The Plaintiff's complaint and amended complaint do not allege an age discrimination

16         claim.

17   3.    On June 16, 2011, the district judge referred this matter to the undersigned to conduct a

18         settlement conference at the close of discovery.  See Minute Order (Dkt. #44).

19   4.    The court entered an Order Scheduling a Settlement Conference (Dkt. #46) on July 7,

20         2011.  The order set the settlement conference for October 13, 2011, and instructed the

21         parties to file confidential settlement memoranda containing the information the order

22         specified.

23   5.    The Order (Dkt. #49) denying Defendant's motion to dismiss and motion for summary

24         judgment was entered September 27, 2011, before the court-ordered settlement

25         conference was conducted.

26   6.    The court spent more than three hours conducting the settlement conference with

27         counsel and an authorized representative of each side.  Plaintiff's wife was permitted to

28         attend the settlement conference and was present throughout.

7.  During the settlement conference, the Plaintiff made the initial demand for a monetary amount to settle this case. Counteroffers were exchanged. The Defendant accepted the Plaintiff's counteroffer to settle for an amount of money the Plaintiff requested. As the settlement agreement reached was confidential, the court will not indicate the amount of the settlement the parties agreed upon.

8.  Before Plaintiff made the counteroffer which Defendant accepted, the court explained to the Plaintiff, in the presence of his wife and counsel, that the Defendant would require a written settlement and release agreement containing standard terms familiar to his attorney that are common in settlements of employment-related actions in this district. The court explained to the Plaintiff that the settlement and release documents would contain language releasing all claims against the Defendant, dismissing his case with prejudice with each side to be responsible for its own costs and attorneys fees, that the settlement would be confidential, and it would contain a provision that Plaintiff would not apply for rehire with the Defendant and its related entities. The court also explained that the written agreement would contain a provision that the settlement was a compromise of a disputed claim and that the Defendant was not admitting liability.

9.  Defendant accepted Plaintiff's counteroffer to settle for the monetary amount Plaintiff demanded after receiving authority from its authorized insurance representative. The court inquired whether defense counsel was requesting any special term or condition of the settlement, other than the standard terms incorporated in virtually every employment-related settlement in this district. Defense counsel responded that a standard settlement and release agreement would be drafted providing for a general release of all claims, a dismissal with prejudice with each side to bear its own costs and attorneys fees, a confidentiality clause with an exception for disclosure to a tax or other professional for tax or legal advice, a provision that Plaintiff would not apply for rehire, and that Defendant was not admitting liability.

10. After Defendant accepted Plaintiff's counteroffer, the court advised Plaintiff, in the presence of his wife and counsel, that the Defendant had accepted his counteroffer. The

1    court again went over the standard terms and conditions of the settlement agreement.

2    Counsel for Plaintiff, Mr. Kemp, indicated he was familiar with opposing counsel's

3    standard release and agreement, and raised no objections concerning any specific terms.

4    Counsel for Plaintiff did, however, request that Defendant issue tax form 1099 for

5    settlement proceeds and that two checks be issued, one for the Plaintiff's portion of

6    settlement proceeds, and the second for the attorney's fees and costs portion of the

7    settlement agreement.  Defense counsel agreed to this request.

8    11.    Counsel for both sides indicated it would take approximately thirty days to prepare,

9    review and execute settlement documents, and exchange settlement proceeds.  The court,

10    therefore, set a telephonic status conference consistent with the parties' scheduling

11    needs.

12    12.    Counsel for the parties indicated thirty days was a reasonable period to complete the

13    settlement agreement and distribute the settlement proceeds because Defendant wanted a

14    general release of claims to extend to claims under the ADEA, and the thirty days would

15    allow for the twenty-one-day period to allow the Plaintiff to consider the written

16    agreement providing for a waiver of an age-discrimination claim, and seven days

17    thereafter to exercise his revocation rights under theOWBPA.

18    13.    At the December 13, 2011, hearing, counsel for Defendant indicated that a written

19    settlement and release agreement was not forwarded to counsel for Plaintiff before

20    counsel for Plaintiff sent his October 17, 2011, letter, indicating that the Plaintiff had

21    directed him to revoke any agreement that may have been reached at the October 13,

22    2011, settlement conference.  Counsel for Defendant acknowledged at the hearing that

23    the settlement and release agreement Defendant proposed would contain a waiver of any

24    ADEA rights.

25    14.    Counsel for Defendant requested a waiver of any ADEA claim Plaintiff might later

26    assert because Plaintiff has been litigious, and defense counsel wanted to "cover all the

27    bases."  However, defense counsel stated on the record at the December 13th hearing

28    ///

1      that, as Plaintiff does not wish to waive any age-discrimination claim, Defendant has

2      withdrawn its request for an ADEA waiver.

3   15.   During the December 13, 2011, hearing, counsel for Plaintiff conceded that the

4      Defendant accepted the Plaintiff's monetary counteroffer to settle.  Counsel for Plaintiff

5      also conceded that the parties reached an agreement on the following essential terms: (a)

6      the amount of the settlement; (b) that the settlement would include a general release of

7      all claims; (c) that this case would be dismissed with prejudice with each side to bear its

8      own costs and attorneys fees; (d) that the settlement would be confidential; (e) that

9      Defendant would not admit liability; and  (f) that Plaintiff agreed he would not apply for

10      rehire.

11   16.   At the hearing, Mr. Kemp clarified Plaintiff's position.  Plaintiff agreed to all essential

12      terms of the agreement, including an agreement to waive any ADEA claim.  Counsel for

13      the Plaintiff represented that his client asked why it would take thirty days for the

14      settlement to be completed and settlement proceeds to be paid.  Mr. Kemp explained to

15      Plaintiff that because the Defendant had requested a waiver of his ADEA rights, there

16      was a waiting period.  Mr. Kemp also explained to the Plaintiff that the Plaintiff could

17      revoke the settlement before the expiration of the waiting period.

18   17.   Plaintiff changed his mind about accepting the settlement counteroffer he made, which

19      Defendant accepted, after receiving additional settlement authorization from its

20      insurance carrier.

21      **IT IS ORDERED** these findings shall be submitted to the district judge for her consideration of

22   the merits of the Motion to Enforce the Settlement (Dkt. #51).

23      Dated this 19th day of December, 2011.

24

25

26   _____
     PEGGY A. LEEN
     UNITED STATES MAGISTRATE JUDGE

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28